IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DELFINO GONZALEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:07-CV-478-A |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Delfino Gonzalez, TDCJ #1330416, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Sugar Land, Texas.[1]

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

---

[1] Although at time this petition was filed Gonzalez was confined in the pre-parole release facility in Mineral Wells, Texas, he is now confined at the Central unit in Sugar Land, Texas. *See* TDCJ, Offender Information Detail, *available at* http://www.tdcj.state.tx.us/offender_information.

Justice, Correctional Institutions Division (TDCJ).

## C. FACTUAL AND PROCEDURAL HISTORY

Gonzalez is serving three 6-year sentences on his 2002 conviction for felony DWI in Medina County, Texas, cause no. 02-06-8693-CR, and 2003 convictions for felony DWI and possession of a controlled substance in Bexar County, Texas, cause nos. 2004CR0987 and 2004CR1770. (Resp't Answer, Exhibit A) Gonzalez was apparently transferred to the Mineral Wells pre-parole facility, a community residential facility, and given pre-parole status on August 22, 2006. (State Habeas R. at 69-70)[2] He was first reviewed for mandatory supervision release on September 6, 2006, however, he was given a "serve all" and denied release by the Texas Board of Pardons and Paroles (the Board) pursuant to § 508.149(b). (*Id.*) The Board denied Gonzalez release to mandatory supervision a second time on April 18, 2007.[3] (*Id.* at 26) Gonzalez's next review date was set for April 2008. (*Id.*) Gonzalez filed a state habeas application, raising one or more of the claims presented herein, which was denied by the Texas Court of Criminal Appeals without written order. *Ex parte Gonzalez*, Application No. WR-67,804-01, at cover. This federal petition followed.

---

[2]"State Habeas R." refers to the record of Gonzalez's state habeas application no. WR-47,182-05.

[3]Section 508.149(b) provides:

    (b) An inmate may not be released to mandatory supervision if a parole panel determines that:
        (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and

        (2) the inmate's release would endanger the public.

TEX. GOV'T CODE ANN. § 508.149(b) (Vernon Supp. 2007).

D. ISSUES

Generally, Gonzalez claims the Board misapplied § 508.149(b) of the Texas Government Code (entitled "Inmates Ineligible for Mandatory Supervision") to his case, and the Board's denial of his release and resultant loss of time credits violates his constitutional rights and the pre-parole contract agreement with TDCJ. (Petition at 7-8; Pet'r Memorandum at 2-25)

E. RULE 5 STATEMENT

Quarterman believes Gonzalez has not sufficiently exhausted his state remedies to the extent he presents documentary evidence and legal argument not presented in state court. 28 U.S.C. § 2254(b), (c). However, this Court may deny a petition for habeas relief notwithstanding a petitioner's failure to fully exhaust his claims in state court. *Id.* § 2254(b)(3).

F. DISCUSSION

A habeas corpus applicant under 28 U.S.C. § 2254 must claim violation of a federal constitutional right to be entitled to relief. *See Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). A state prisoner does not have a federal constitutional right to obtain release prior to the expiration of his sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Thus, any protected liberty interest to release prior to expiration of Gonzalez's sentence must arise from state law.

Gonzalez claims he was transferred to a pre-parole release facility, given a presumptive parole date, and has a protected liberty interest in release under § 508.151 of the Texas Government Code (entitled "Presumptive Parole Date") as a pre-parolee. There is no constitutional expectancy of early release on parole in Texas, because parole is within the total and unfettered discretion of the State. *See Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Although the record reflects that

4

the Board may have established a presumptive parole date for Gonzalez at the time he was transferred to the pre-parole facility, there is no evidence that he was ever transferred from pre-parole status to parole status. *See* TEX. GOV'T CODE ANN. §§ 499.001(4), 499.002, 499.005 & 508.151 (Vernon 2006). Moreover, as determined by the state courts, no contractual relationship arises prior to the execution of the parole certificate. (State Habeas R. at 71) Thus, Gonzalez's claims that he had a protected liberty interest in his presumptive parole date and that the Board improperly revoked his pre-parole contract are groundless.

Equally groundless is Gonzalez's claim that § 508.149(b) is not applicable to him and that, because of his pre-parole status, he was entitled to a revocation hearing before the Board rescinded his presumptive parole date. Texas's pre-parole program is not "a kind of parole" that would entitle Gonzalez to any procedural due process requirements. *See Morrissey v. Brewer*, 408 U.S. 471 (1972) (providing minimum due process requirements in a parole revocation case). *See Patterson v. Cockrell*, No. 4:02-CV-511-Y, 2002 WL 32509028, at *4-5 (N.D. Tex. Oct. 24, 2002) (not designated for publication). *Compare Young v. Harper*, 520 U.S. 143, 152-53 (1997) (holding that due to nature of Oklahoma's pre-parole program it was a "kind of parole"). Further, under Texas law, the Board may rescind or postpone a previously established presumptive parole date. *See* TEX. GOV'T CODE ANN. § 508.151(c) (Vernon 2006).

On the other hand, the Texas mandatory supervision scheme does create a constitutional expectancy of early release for eligible inmates and, as such, a liberty interest in accrued good and work time credits, entitling an inmate to minimum due process protection. *See Teague v. Quarterman*, 482 F.3d 769, 776-77 (5th Cir. 2007); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)); *Ex parte Geiken*, 28 S.W.3d 553, 558-

5

60 (Tex. Crim. App. 2000). In light of the liberty interest created by the statute, the Texas Court of Criminal Appeals has determined that, under these circumstances, constitutional due process requires that an eligible inmate be provided timely notice that he will be considered for mandatory supervision release and a meaningful opportunity to be heard–i.e., an opportunity to tender or have tendered to the Board information in support of release. *Ex parte Geiken*, 28 S.W.3d at 559-60. Additionally, if release is denied, the inmate must be informed in what respects he falls short of qualifying for early release. *Id.* at 560. In a later opinion, the state court determined that the notice requirement requires the Board to inform the inmate of the specific month and year he will be reviewed. *Ex parte Ratzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).

On January 11, 2007, Gonzalez was notified that the Board would review his file for discretionary mandatory supervision release within thirty days of his projected release date of May 11, 2007. (Resp't Answer, Exhibit C) He was informed that if he wished to submit any additional information, he should do so in writing before March 27, 2007, to the Parole Division. (*Id.*) Thereafter, on April 18, 2007, the Board decided to deny Gonzalez discretionary mandatory supervision release and notified him of its decision, the reasons for its decision, and that his case would be reviewed again in April 2008. (*Id.*) The Board listed the following reasons for denying Gonzalez's release:

(1) The record indicates that the inmate's accrued good conduct time is not an accurate reflection of his potential for rehabilitation.
(2) The record indicates that the inmate's release would endanger the public.
(3) The record indicates that the inmate has repeatedly committed criminal episodes or has a pattern of similar offenses that indicates a predisposition to commit criminal acts when release; or the record indicates that the inmate is a lead or active participant in gang or organized criminal activity; or the record indicates a juvenile or an adult arrest or investigation for felony and misdemeanor offenses.
(4) The record indicates excessive drug or alcohol involvement which includes possession, use or delivery in the instant offense or criminal history.

6

(5) The record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in-absentia revocations. (State Habeas R. at 26)

In denying mandatory supervision to Gonzalez, the Board did not forfeit any of Gonzalez's accrued good or work time credit. Further, the decision was within the Board's authority, and the reasons cited are neither arbitrary or capricious in light of Gonzalez's criminal history. Gonzalez has not demonstrated that the Board's decision or the state court's rejection of his claims are contrary to clearly established federal law or are otherwise unreasonable. 28 U.S.C. § 2254(d). As a matter of state and constitutional law, it appears Gonzalez was afforded all the due process he was entitled.

Finally, Gonzalez claims application of § 508.149(b) to his case violates his rights under the equal protection clause and, by implication, the separation of powers clause. Gonzalez has not shown, however, that the Board denied him release on mandatory supervision because of any purposeful discrimination or any impermissible motive, such as race. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-08 (5th Cir. 1997). Furthermore, he cites to no clearly established federal law that § 508.149(b) implicates a violation under the separation of powers clause, and none has been found.

## II. RECOMMENDATION

Gonzalez's petition should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.

7

The court is extending the deadline within which to file, not merely place in the mail, specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 13, 2008. Failure to file specific written objections within the specified time shall bar a de novo determination by the district court of any finding of fact or conclusion of law and shall bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

### IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 13, 2008, to serve and file, not merely place in the mail, written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 23, 2008.

    /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE